The last case on the calendar for argument today is number 2162, Manderville v. Kijakazi. Mr. Barton, whenever you're ready. Yes, may it please the court. Your honors, this is a social security disability case but it's different from most because in this case it has already been determined that the administrative law judge, the ALJ's decision was erroneous. The issue instead is the remedy and the district court made the determination it should be sent back again for another hearing. Our position is that the rec... But this is for pre-2016 condition, right? Right, but let me, right, for pre-2016, it's a very, and that's part of the reason that we think that it militates in our favor is that it is a discrete period and that is the period is 9 of 13 through 11 of 16. However, in terms of the meaning to the plaintiff, there are two different types of social security. There's supplemental security income where you basically, it's a little bit more than you'd get on social services, a tiny bit more. And to get that, you have to show that you're destitute and you have no money. And the amount that you get is then based upon whether you have any money or have any assets as opposed to disability. And in this particular case, in order to be entitled to disability, his date last insured was within that period. It was 12-31-13. So even though it's a discrete period, which means that there's nothing more that can be submitted, it means everything to the plaintiff because he gets nothing. He gets SSI to the extent that he doesn't have any assets or income and would be otherwise eligible for welfare. I'm not sure I totally follow you on this. So as things now stand, he has, and I don't think it's disputed, from 2016 going forward, he gets disability benefits. It depends on your definition. From 2016 to current, he would be eligible for supplemental security income. Yes, that is for people who have no other assets and $3,000 in assets and no income, wife, any income imputed. And you can be eligible for it, and yet the amount that you get is minuscule. If you are just under the income limit, just under the asset limit, or your wife or your spouse earns just under. So you can get $100. Everything in this particular case is his disability. And he gets zero disability unless he is found to be disabled during this critical period of, the date is 12-31-13. In fact, in the first decision, although it's not relevant to our case, the judge forgot about the SSI case. But in any event, we think that he is clearly entitled to it in this particular case. And that's one factor. One factor is there can't be any more evidence because we are dealing with that remote, discrete period. The second is the history of the case. I'm sorry, could I just ask what you're asking of this court? To remand for calculation of benefits as opposed to remand a third time. To remand for calculation of benefits, and very specifically, on the issue of off-task and absenteeism. What the vocational expert testified was that- So the district, sorry, the district court, though, didn't find, the district court was ordered a remand for that finding that you're asking us to- No, the district court said, we're going to remand it, and we're going to let the government do whatever they want to do. There is no new evidence unless they create new evidence. I thought the district court's remand asked the ALJ, the new ALJ, to determine whether your client was disabled from the 2013 to 2016 period. Based upon anything that the government could then add. So as you were talking about in the case that preceded us, was the expert testimony. So this expert, the medical expert that the government produced to close the record, said he's going to be off-task more than 15%. He's going to miss more than two days a month. The vocational expert said, with the exact finding that the administrative law judge had, he is entitled to benefits if either off-task is 15 or absenteeism is 1. Every single provider said, off-task is greater than 15, off-task, absenteeism is greater than 1. Therefore, he is entitled to benefits, and there is nothing more that can be produced. Other than, OG government, we're going to let you now go back and get yet another medical expert. So wasn't the concept of the remand not a remand for more evidence, but a remand because the second time around, the ALJ made the same analytical errors as it had made the first time around in terms of mistaking the evidence. And so it was asking for them to revisit the existing evidence with a new perspective? Yeah, and Judge Robinson, are you asking, because this is where it was a little bit confusing. Are you asking about the remand the first time, or- No, no, the remand that you've now appealed. You've appealed the scope of the remand. The entire argument before Judge Magistrate, Judge Lavreck, the entire argument was that we argued the record is complete. It's a discrete period. You had a medical examiner. We had treating sources. They all say the same thing. There is nothing more, this evidence is complete as to off-task and absenteeism. But the remand wasn't about completing the record. The remand was about redoing the analysis of the record, with a new ALJ because this one had messed up twice now. And saying, okay, let's get a new ALJ to look at this and make the disability determination without the errors that infused the first and second ALJ determinations. And the question is- And with respect to 2013 to 2006. Right, and with respect to that, I would note that we actually, one of the things we argued was, if this gets sent back with a directed finding that the new judge only look at the evidence of record, we actually wouldn't have objected. But a remand that's open-ended and says, okay, and the thing with the new judge, I appreciate Judge Robert saying that we'd get a new ALJ, but that would have happened anyhow. The rule is, and Ms. Fernandez would agree, that once an administrative law judge has looked at it twice, he is precluded by the defendant, or in this case, she. Precluded by the defendant, so that was nothing. That would have happened either way. But the issue is that the standard is set forth in both briefs. If there's no apparent evidence that new evidence would support the commissioner's decision, then he's entitled to benefits. I think that the issue here was that there had been no finding of disability with respect to 2013 and 2016. The ALJ said there were unresolved issues and sent it back to get resolved. The district court. There are no unresolved issues, all we want is a computation of benefits for that period. That is what we're saying. What am I getting wrong? That is what we are saying, is that there's no, the administrative law judge made the finding that the claimant was not disabled for those three years. And everybody has agreed that that is wrong. But the question is, if this goes back on this record, the only thing that could occur when you look at this evidence without anything more is that he's disabled. You have three different doctors, every doctor, every single doctor. I read the record, the medical evidence for that scope period was inconclusive. That's what the administrative law judge found. But we, but our argument- That's why the ALJ sent it back, right? The ALJ, the district court. You mean, you're talking to the magistrate judge? I'm sorry, that's okay, because the magistrate judge said that the errors were made, so it has to be sent back. Our position is that, yeah, errors were made, but it doesn't make any difference, because when you send it back on this record, no other finding can be made other than that he's disabled for these three years, because Doctor A, treating doctor, 33% off task. B, nurse practitioner, pain clinic, specialist. All the medical evidence is congruent on that. Right, on that issue, everything is congruent. With the medical examiner, their expert, you never get a listing case, because no cases ever meet a listing that comes this far. Their medical expert said he equals the listing. That's how bad the condition is in this particular case. Yes, that's our point, is that on an eight and a half year old case, which is supposed to be remedial, all it does, unless you allow the government to get now another witness, which they should be precluded, no matter what you do, we respectfully request. They should not be allowed to get another expert. We think if it goes back to any administrative law judge just on this record, and they find that he's not disabled, it's going to get reversed on appeal. There's nothing to do. That's our argument. Thank you. I went over. Thank you. We'll hear from the government. Ms. Fernandez. Good morning. May it please the court. My name is Christina Fernandez. I represent the commissioner. As the district court noted in its order- Could you, you have to just keep your voice up just a little bit. Sure. As the district court noted, this matter was previously remanded to allow for the AOJ to offer additional explanations of the evidence, and not because of finding that there is persuasive proof of disability on this record. Indeed, there is no persuasive proof of disability prior to November 4th, 2016. So, can I ask about that? Because when they first remanded, you did have two treaters. One was an NP, so it didn't get quite the same statutory rate for a bump. But you had two treaters saying 33% of the time off task, and you had a vocational expert saying anything over 15 is disabled, regardless of the residual functional capacity, whether it's full scope light duty, light duty with some postural limitations, etc. On remand the first time, the government got another bite at the apple, got another exam. And its examiner, in addition, and I want to ask you some questions about the meets or equals listing finding. Says, yeah, 15 to 20% of the time off task. How could, on that record, any determination of not disability not be reversible error? Well, the AOJ considered the nurse practitioner, Corey Pains. She had similar, she gave similar off task and absenteeism limitations. And the AOJ rejected those specific limitations because they were not supported by the record. But when you say that, where? Where is there a provider that says, no, I think that there is 100% or less than 15% of the time off task, or where is there even evidence of him doing the New York Times crossword puzzle without interruption, or something that definitively rebuts this off task? I'm just- Well, Dr. Kim, who was an associate of Dr. Bennett's, they were both treating orthopedists for Mr. Manderville. In early 2014, he released Manderville to perform light duty work with no indications that he would be off task or absent from work as a result of his impairments. Was there any evidence that that question was posed to Dr. Kim? I don't believe so. But the- What is your evidence, excuse me, what is your position on what is to occur on this remand? On remand, the ALJ both times was supposed to- On this one. On this one. I'm sorry, I interrupted you. It's okay, thank you. Continue. As the district court noted, the ALJ was supposed to evaluate the opinions properly under the regulations. The opinions of Dr. Bennett, the consultative examiner, Dr. Magurno, and Dr. Kim. And also the nurse practitioner, Corey Payne. The ALJ both times incorrectly indicated that Dr. Bennett had not seen Manderville since 2013. When the evidence, and also suggested that Dr. Bennett lacked a specialty. When the evidence clearly shows that Dr. Bennett treated Manderville through 2015 and is a treating orthopedist. That in itself is an error which led the ALJ to incorrectly evaluate Dr. Bennett's opinion. Also with Dr. Magurno's opinion, the ALJ twice performed the exact same incorrect analysis. The ALJ rejected the consultative examiner's squatting limitations based on Dr. Kim's opinion. Which did not address squatting. And also the ALJ did not address Dr. Magurno's marked lifting limitations. Which the court found left it just speculating on how it was that the opinions were resolved by the ALJ. And since the ALJ, it was the same ALJ twice, she committed the same errors twice, it has to go back. It cannot go back because it's, he applied in 2000. I know it's going back, but my question to you is why it's going back for what purpose? For what to be done? To resolve his RFC, to resolve the step three finding, to, it needs a whole new analysis because had the ALJ done it the first time, we wouldn't be here. There is no persuasive proof of disability on this record. So- For the entire period, or for a step period? For the period from his alleged onset date of September 2013, through the day before the date he was found disabled, which is November 3rd, 2016. So how much latitude, please. I'm talking about how much latitude the ALJ has in the face of two treaters and a consulting examiner addressing the issue of being on task. No other medical testimony contradicting that. To what extent is the ALJ free to say, well, I'm not persuaded by the treating orthopod, the treating primary care provider, and the consultative examiner, because I think that he can sustain on task for more than 15%, or it's not a 15% or more. Without being able to point to some medical evidence in the record that says that. Well, the ALJ's job is to consider the overall record, the objective and non-objective medical evidence. Here, the neurological and physical examination findings outlining the commissioner's brief indicate that the findings were generally unremarkable. The ALJ has, his job is to take all of the evidence together. The- I get that as to the scope of the postural limitations. And I even get that as to the meets or equals the listing argument. Although I do want to ask a question about that. But the on task focus is not a data point that is typically documented in a physical examination every time you go in to the doctor. So the absence of any remarks about that, in contrast to Antaldrogate or something like that, doesn't strike me as evidence at all. It's just nothing. Well, the ALJ did indicate, as I stated earlier, did reject those specific findings from the nurse practitioner, from Mr. Vanderbilt's pain management. But the question is whether the ALJ was within the ALJ's authority in the face of three uncontradicted testimony from three providers, including two treaters and a consulting examiner. I understand the ALJ rejected that, but why is that not reversible error for the ALJ to have rejected that? Because it's not supported by the overall objective physical and neurological findings. And can you point me to what findings are inconsistent with that opinion? Just the overall findings that don't substantiate his alleged level of pain that would cause him to miss work four times per month and to be off task 33% of the time. It's not consistent with the findings that his own doctors made. That the doctors, that Dr. Bennett or Corey Payne who treated him, their findings throughout the relevant period are unremarkable, essentially unremarkable. If we said, if we ruled in your favor and said no, it should be remanded for a determination as to disability during this period as well as for calculation of benefits. Does the government concede that it would not be entitled to secure additional evidence to support its case? This case is not about a lack of evidence. The record is complete. So the government wouldn't object to an order that limited the remand to the evidence currently of record. I believe if the ALJ opted to choose to have a medical expert come in and a vocational expert come in to testify at step four and step five, that should be allowed. But again, it's a remote period. The commissioner is not asking, is not saying that there is an evidentiary gap. The gap here is a legal analysis gap by the ALJ in terms of the opinion evidence, as indicated by the district court. So remand of this case should be for further proceedings and not for calculation of benefits. Thank you. Thank you. Thank you, counsel. Mr. Gorton, you have three minutes for rebuttal. And just very briefly, a great argument. But the entire argument's a red herring. Everyone concedes that errors were made. Errors were made all over the place. That's not the question. The question is when it goes back, could someone look at this record and find anything other than that the off task is greater than 15%, the absenteeism is greater than one day per month based on this record. And I read a little bit. This is their orthopedic medical, it's not their normal consultative or non consultative exam. They go out of their way to get a medical expert. And that's different. And he says, he says there's severe foraminal narrowing bilaterally at C5, C6. It meets listing 104A from that perspective. And it equals when you add everything else. When you look at the lumbar MRI, there's lumbar MRI which shows long standing spondylosis at L5 S1 with pars defect at L5. And what that means is there's a separation between the anterior and posterior portions of the L5 vertebrae. Such as the vertebral body and the facets, aesthetically can move forward, but there's a segmental instability. And then there's disk space narrowing and neuroforaminal narrowing. So he has given the entire explanation as to, and then he says, yes, one day it's better, one day it's worse. I agree entirely, there will be absenteeism. Yes, these things hurt when it's bad, and he would be off task. And there is no other evidence, certainly Dr. Kim, and we set that forth on page six of our brief. The next two times, we saw Dr. Kim one time, think he's doing better, might be able to go back to work. We don't know if he knows the social security terms, he's just using it as you and I might use a term. But then the next time, he says, no work. And then the time after that, he says, and he didn't get better. And then the next time after that, he says, I think we're going to have to do surgery. Nobody else who, every single person on this record, if you send it back and you don't allow another medical examiner on this record, the only thing that can be determined is that the off task is greater than 15, absenteeism greater than one, even if the judge is absolutely right with respect to the residual functional capacity. And he could do every single thing, if in doing it, he misses a day, more than a day, he's off task, more than 15%, no jobs. And that's why we think it should be remanded solely for calculation of benefits, besides the fact. It's eight and a half years old, it's a remedial statute, it's gone back three times already, and nothing further could be done. Thank you. Thank you both, I'll take the case under advisement. The remaining cases on the calendar for today are on submission, so that concludes our business for the day. I'll ask the court room deputy to adjourn. The court stands adjourned.